KORTE, Respondent, v. LANG, Defendant, and STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Garnishee and Appellant.

(248 N. W. 253.)

(File No. 7310. Opinion filed May 1, 1933.)

*Williamson, Smith & Williamson,* of Aberdeen, for Appellant.
*McFarland & Kremer,* of Watertown, for Respondent.

ROBERTS, J.   Plaintiff, as administratrix of the estate of Earl Korte, her brother, whose death resulted from injuries sustained by him when the automobile driven by defendant Joe Lang and in which decedent was riding left the highway and struck a

tree, instituted this action and recovered judgment against Lang. Execution was issued, and thereafter plaintiff caused a garnishee summons, naming the defendant State Farm Mutual Automobile Insurance Company as garnishee, to be issued and served. The garnishee answered that the policy of insurance against "liability and property damage" which it issued to defendant Lang was not in force and effect at the time of the accident by reason of non-payment of premium deposit; that defendant Lang was intoxicated and was using the car for the transportation of intoxicating liquor when the accident occurred; and that the judgment against Lang was procured by default and collusion between him and the plaintiff.

Defendant Lang drew his check on a form prepared by the company and used by its soliciting agents upon the First National Bank of Ortonville, Minn., to include the amount of membership fee and premium deposit on this policy, and the check was made payable "not before September 1st, 1929." Upon receipt of the check a policy was issued "for an initial term of six months" from the 1st day of July, 1929, and "for such succeeding terms of six months each as the premium deposit" was restored. The check was transmitted to the bank upon which it was drawn and was dishonored by the bank on September 6, 1929. The policy contains this provision: "This entire policy shall automatically and immeditely be void without notice of any kind: (1) if there shall be default of any kind, or for any reason whatsoever, in payment of the check given for the membership fee or premium deposit when the same is due and presented for payment." Garnishee defendant is a mutual automobile insurance company. The company requires a membership fee for each class of insurance and also a premium deposit. The initial premium deposit is for insurance expiring six months from the date of the issuance of the policy, and "if for the purpose of restoring a premium deposit the assured shall pay his share of the losses, expenses and liabilities as required by the board of directors," the insurance is renewed automatically for the six months' period from the expiration of the preceding period. The assessment against each member cannot exceed twice the amount of a premium deposit, but the policy provides that the "premium deposit shall be treated as earned pro rata during each six months period."

■■ It is the claim of the plaintiff that the insured did not receive a notice of cancellation of the policy as required by the provisions of section 9191, Rev. Code 1919. This section provides as follows:

"No policy of insurance shall, by virtue of any condition or provision thereof, be forfeited, suspended or impaired for non-payment of any note or obligation taken for the premium or any part thereof, unless the insurer shall, not less than thirty days prior to the maturity of such premium note or obligation, mail, postage prepaid, to the assured at his usual postoffice, a notice stating:

"1. The date when such note or obligation will become due.

"2. The amount of principal and interest that will then be due.

"3. The effect upon the policy of nonpayment.

"Such notice shall further inform the assured of his right, at his own election, either to pay in full and keep the policy in full force or to terminate the insurance by surrendering the policy and paying such part of the whole premium as it shall have earned, and must further state the amount which assured is lawfully required to pay, or which, on account of previous payment, may be due him in case of his election to terminate the insurance on the day of the maturity of the premium note or obligation."

Mutual insurance companies, writing the forms of insurance specified in section 9185, Rev. Code 1919, are as effectively bound by the provisions of section 9191 as other insurance companies. Schultz v. Des Moines Mut. Hail & Cyclone Ins. Ass'n, 35 S. D. 627, 153 N. W. 884, Ann Cas. 1917D 78; Good v. Farmers' Mut. Hail Ins. Ass'n of Iowa, 58 S. D. 106, 235 N. W. 114. Garnishee defendant was licensed to do business in this state under chapter 267, Laws 1921, and contends that by reason of section 16 of this act the provisions of section 9191 are not applicable. The section referred to reads as follows: "Except as provided herein or as such companies may be hereafter expressly designated in any other law, insurance companies organized, licensed or admitted to do business in this state under this act shall not be subject to any other law of this state governing insurance companies."

However, section 15 of this same act specifically provides that a mutual insurance company operating under its provisions shall

be subject to all provisions of law relating to policy forms and conditions.

Defendant company takes the position that section 9191 does not apply for the reason that the postdated check given by Lang is neither a "note" nor an "obligation" as such terms are used in the statute. It is said in Good v. Farmers' Mutual Hail Ins. Ass'n of Iowa, supra, that the sense in which the term "obligation" is used in this statute is that of an instrument taken for the payment of money at some future time; it must be in writing and create or fix some liability.

█ █ A check is a negotiable instrument. Section 1887, Rev. Code 1919. The instrument is not invalid for the reason only that it is postdated, provided this is not done for an illegal or fraudulent purpose. Section 1716, Rev. Code 1919. The drawer of a check is conditionally liable thereon. If the check is dishonored by the drawee and notice thereof given to the drawer, the effect, so far as the drawer is concerned, is to change the conditional liability that he will pay the check if the drawee does not to one free from the condition; his situation becomes like that of a maker of a promissory note. Usher v. A. S. Tucker Co., 217 Mass. 441, 105 N. E. 360, L. R. A. 1916F, 826; Albers v. Commercial Bank, 85 Mo. 173, 55 Am. Rep. 355; Brown v. Cow Creek Sheep Co., 21 Wyo. 1, 126 P. 886; Patterson v. Oakes, 191 Iowa, 78, 181 N. W. 787, 14 A. L. R. 559. The conditional liability of a drawer upon a postdated check does not exclude the instrument from the provisions of the statute under consideration. The provisions of section 9191 were applicable, and the policy was not suspended for nonpayment by virtue of the provisions contained in the policy to the effect that if there shall be default in the payment of a check given for a premium deposit the entire policy shall be void without notice of cancellation.

█ The policy contains the clause that "the company shall not be liable and no liability or obligation of any kind shall attach to the company for losses or damage. * * * (E) caused while the said automobile is being driven or operated by any person whatsoever * * * under the influence of liquor. * * * (F) if the automobile described herein * * * is used for the transportation of * * * of intoxicating liquors." Defendant Lang, dece-

dent, and one Lawrence Jacobs were driving from Big Stone City to Ortonville, having returned from Milbank, where they attended the county fair, through Lac qui Parle county, Minn., when the accident occurred in the early morning of September 8, 1929. The trial court found adversely to the garnishee defendant on the issues of intoxication and transportation. The findings thereon are as follows:

"XII. That at the time of the accident on September 8th, 1929, when the automobile of the defendant, Joe Lang, was damaged and the said Earl Korte was injured and killed, no intoxicating liquor was being transported in the defendant's automobile and none had been so transported since the defendant left Big Stone City, South Dakota, in the early evening. That no extra hazard was created at the time of the use, management and operation of the said automobile by the defendant, Joe Lang, as a matter of fact.

"XIII. That at the time of the accident on September 8th, 1929, and when the said defendant, Joe Lang, was driving his said automobile, he, the said Joe Lang, was not under the influence of intoxicating liquor, at the time of said accident, or at any time that evening while he was driving his car."

The garnishee defendant urgently contends that these findings are against the clear preponderance of the evidence. It is undisputed that Lang and his companions procured a bottle of alcohol, transported this liquor on their return trip from Ortonville to Big Stone City in the car which was later damaged in the accident, and drank at least a portion of the liquor diluted with malt. Lang and his companions resided in Big Stone City, this state, but before leaving for Milbank they drove to Ortonville, Minn., to procure the alcohol. Lang was arrested after the accident by the sheriff of Lac qui Parle county, Minn., indicted on a charge of transporting intoxicating liquor, and subsequently pleaded guilty before the district court of that county. The garnishee defendant submits that this plea is conclusive, and that Lang and his companion Jacobs evasively endeavored in their testimony to make it appear that the only transportation in Minnesota was early in the evening and that the liquor had been consumed before the accident. Officers who made an investigation of the scene of the accident testified

that they found no intoxicating liquor in plaintiff's car, but found therein broken bottles including an eight or ten ounce flask and a strong odor of intoxicating liquor. The county attorney of Lac qui Parle county, a witness for the garnishee defendant, testified that he talked with Lang and Jacobs with reference to the accident; that Lang stated that at the time of the accident all of the alcohol had been consumed, but that Jacobs stated that he believed that there was some alcohol left in the bottle when the accident occurred. This conflicted with the testimony given by Jacobs on the trial. The physician who examined defendant Lang following the accident testified that Lang was intoxicated. Other witnesses who saw and talked with Lang during the evening before or immediately following the accident testified that there was no appearance of intoxication. A conflict of the evidence appears upon the issues under consideration. The findings of the trial court are presumably correct, and it is only when this court is satisfied that there is a clear preponderance of the evidence against such findings that such presumption will be overcome and the decision of the trial court reversed. Sweeney Hardware Co. v. Gardner, 18 S. D. 166, 99 N. W. 1105; Bates v. Smith, 48 S. D. 602, 205 N. W. 661; Northwest Farmers' Credit Ass'n v. Horswill, 57 S. D. 208, 231 N. W. 908. Notwithstanding there is a conflict in the evidence, we are not satisfied that the same preponderates against the findings under consideration. Likewise, after carefully considering the entire record, we are not able to say that the finding of the trial court to the effect that there was no conspiracy or collusion to defraud the insurer as alleged in the disclosure of the garnishee is without adequate support in the evidence.

In Lang v. State Farm Mutual Automobile Ins. Co., 61 S. D. 274, 248 N. W. 256, the plaintiff recovered judgment for property damage to an automobile under the terms of a collision policy. The case was tried to the court without a jury. In that case, as in the instant case, on substantially the same evidence the findings were adverse to the insurer. The garnishee defendant has submitted its defenses to two judges who having had the opportunity to observe the witnesses, to determine the credit to be given their testimony, and to weigh the evidence, found against the defendant company.

The judgment and order appealed from are affirmed.

RUDOLPH, P. J., and CAMPBELL and WARREN, JJ., concur.

POLLEY, J., dissents.